PREGERSON, Circuit Judge,
dissenting:
I respectfully dissent. I agree that Lopez failed to demonstrate past persecution in Guatemala. But she did present compelling evidence of a well-founded fear of future persecution because of her political opinion. Accordingly, I would GRANT her petition to overturn the BIA’s denial of asylum and REMAND.
Lopez’s father, Herman Lopez Chape-tón, was active in the Christian Democracy Party, where he rose to the position of *684 General Secretary. Lopez was also active in the Christian Democracy Party, where she served as its Queen and as its Organizational Secretary.
In 1995, Lopez’s father warned her that she was at risk as long as she stayed in Guatemala. Within months of the warning, Lopez’s father was stabbed and bled to death in Guatemala. Two of Lopez’s cousins, also involved in the Christian Democracy Party, were subsequently murdered in Guatemala: one was shot and killed in 1997, and the other was stabbed to death and his corpse burned in 2004.
The Guatemalan police failed to find the culprits responsible for the murders. Although it is unclear from the record whether the Guatemalan government is unable or unwilling to investigate these murders, Lopez believes that all three murders were connected to her family’s political activity and, in particular, to her father’s prominence within the Christian Democracy Party. Lopez testified that “[tjhere are still people who can still remember my father[,] so my cousins were killed in 1997 and the other one in 2004.”
An asylum applicant “satisfies the subjective component [of a well-founded fear of future persecution] by credibly testifying that she genuinely fears persecution.” Korablina v. INS, 158 F.3d 1038, 1044 (9th Cir.1998). The IJ made no finding on whether Lopez’s fear was subjectively genuine. Neither the IJ nor the BIA made an adverse credibility finding. “[G]iven the absence of an adverse credibility finding by the BIA we must assume that [Lopez’s] factual contentions are true.” Navas v. INS, 217 F.3d 646, 657 (9th Cir.2000).
Lopez left Guatemala within weeks of receiving her father’s warning that she was “at risk.” She has not returned. Lopez testified that she was afraid to return to Guatemala because she feared that she might be killed like her father and cousins. These facts require us to conclude that Lopez subjectively fears persecution in Guatemala.
To satisfy the objective component of a well-founded fear of future persecution, an applicant need not show that “she would be singled out individually for persecution” if she can establish a “pattern or practice” of “persecution of a group of persons similarly situated to [her] on account of ... political opinion,” and if she also establishes “her own inclusion in, and identification with, such group.... ” 8 C.F.R. § 208.13(b) (2) (iii); Mgoian v. INS, 184 F.3d 1029, 1035 (9th Cir.1999) (finding that a high-profile family can qualify as a persecuted group to establish objective fear).
In Mgoian v. INS, we found that the petitioner’s fear of future persecution was objectively reasonable because “many of her closest relatives had been the victims of direct, and even deadly, attacks,” resulting in the death of one of her uncles. Mgoian, 184 F.3d at 1033. The perpetrators of those attacks were never identified, largely because of the government’s “failure to pursue an investigation,” which the court found was evidence of the government’s inability or unwillingness to protect Mgoian’s family from persecution. Id. at 1036. This established a “pattern or practice” of persecution of Mgoian’s family, even though Mgoian personally did not receive any threats. Id. at 1035. Mgoian was similarly situated to her family members who were attacked, as one of the “immediate members of a certain family,” and also because they were all members “of the Kurdish-Moslem intelligentsia.” Id. at 1036. Accordingly, the harm to Mgoi-an’s family was part of a “pattern of persecution” rather than “isolated violence.” Id.
Like Mgoian, Lopez has provided compelling evidence of an objectively reasonable fear of persecution. “[M]any of [Lo *685 pez’s] closest relatives [have] been the victims of direct, and even deadly, attacks.” Mgoian, 184 F.3d at 1033. Lopez attributes all three murders to her family’s political activity with the Christian Democracy Party, particularly her father’s former role as General Secretary of the party. Lopez’s leadership positions— as Queen and as Organizational Secretary — demonstrate that she is “similarly situated” to those in her family who were active in the Christian Democracy Party and were murdered.
Lopez also expressed her belief that, despite being unable to identify exactly who killed her family members or why, the culprits were motivated by her father’s and cousins’ membership in the Christian Democracy Party. This also establishes that the persecution of Lopez’s family is on account of their political opinion. Moreover, Lopez is unable to identify who killed her family members because the Guatemalan police have failed to arrest or identify those responsible. Lopez, like Mgoian, should not be penalized for the government’s inability or unwillingness to investigate these crimes and bring their perpetrators to justice. Mgoian, 184 F.3d at 1036.
In finding that Lopez has not provided circumstantial evidence of motive, the BIA and the majority ask for more than the law requires of an asylum applicant. An applicant need only provide “some evidence” of the motive of the agent of persecution, either “direct or circumstantial.” INS v. Elias-Zacarias, 502 U.S. 478, 112 S.Ct. 812, 117 L.Ed.2d 38 (1992). Lopez has provided circumstantial evidence of her persecutor’s motives based on political opinion — her father was murdered within months of his warning to Lopez — which is all she must provide. See Sinha v. Holder, 556 F.3d 774, 780 (9th Cir.2009) (finding evidence of an attack’s context sufficient circumstantial evidence of motivation).
The BIA and the majority also found Lopez’s claim of objective fear weakened by the fact that her mother, who was Secretary Adjunct of the Christian Democracy Party, continues to live in Guatemala and has not been harmed. That Lopez’s mother has not been harmed does not mean that Lopez herself faces no risk of persecution. The circumstance of similarly-situated relatives who are harmed “bolsters” a petitioner’s claim of a well-founded fear of future persecution. See Sinha, 564 F.3d at 1022. Bear in mind that three of Lopez’s family members have suffered the most irreparable harm of all: death. Lopez’s three family members who were killed were also similarly situated to her, as fellow members of the Christian Democracy Party.
Even if Lopez faces a ten percent chance of harm, she may have a well-founded fear of being persecuted. INS v. Cardozo-Fonseca, 480 U.S. 421, 440, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987) (“There is simply no room ... for concluding that because an applicant only has a 10% chance of being ... persecuted, that he or she has no ‘well-founded fear.’ ”). Lopez need not offer “proof that persecution is more likely than not.” Al-Harbi, 242 F.3d at 888 (citing Cardoza-Fonseca, 480 U.S. at 431, 107 S.Ct. 1207). Instead, she must demonstrate only that a reasonable person in her situation would fear persecution in Guatemala.
Because Lopez demonstrated a well-founded fear of future persecution in Guatemala on account of her family’s political activity with the Christian Democracy Party, her case should be remanded to the BIA for an exercise of the Attorney General’s discretion to determine whether Lopez should be granted asylum.